**GEOFFREY V. WHITE (SBN. 068012)**
**LAW OFFICE OF GEOFFREY V. WHITE**
21-C Orinda Way #324
Orinda, CA. 94563
Telephone: (415) 373-8279
Facsimile:  (415) 484-7692
Email: gvwhite@sprynet.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PATRICIA A. ROSSI**  </br>    Plaintiff,  </br>    v.  </br>**CISCO SYSTEMS, INC. a California corporation; CISCO SYSTEMS, INC. LONG-TERM DISABILITY PLAN; CISCO SYSTEMS, INC. EMPLOYEE WELFARE PLAN; and METROPOLITAN LIFE INSURANCE CO., a New York corporation,**  </br>    **Defendants.** | CASE NO.  </br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR DISABILITY BENEFITS UNDER ERISA WELFARE PLAN** |

Plaintiff, PATRICIA A. ROSSI, complains of Defendants, and each of them, and alleges as follows:

**JURISDICTION**

1.  This is an action by a participant in an employee welfare benefit plan against the Plan and its named fiduciaries, for injunctive relief and damages to enforce her rights under the Plan to receive Long-Term Disability ("LTD") benefits, because Defendant Metropolitan Life Insurance Co. ("MetLife") has arbitrarily denied her appeal for continued LTD benefits. Jurisdiction is conferred on this Court by Sections 502(e) and (f), 502(a)(1)(A) and (B), and 502(a)(2) and (3) of ERISA, 29 U.S.C. §§1132(e) and (f), 1132 (a)(1)(A) and (B), and 1132(a)(2) and (3), and by 29 U.S.C. §1331(a) and 28 U.S.C. §2201.

///

**VENUE AND INTRA-DISTRICT ASSIGNMENT**

2. The Defendants Cisco Systems, Inc. maintains its principal place of business within this District, and its. Long-Term Disability Plan ("LTD Plan") and Employee Welfare Plan are administered within this District. Defendant MetLife is doing business within this District. Venue is thus proper pursuant to §502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2).

3. The actions and injuries complained of arose in the County of San Francisco, because Plaintiff worked primarily out of the San Francisco offices of Cisco Systems, Inc., although at least half of her time was spent traveling throughout the world on business for Cisco. Accordingly, assignment to the San Francisco District Court is proper pursuant to Civil Local Rule 3-2 (c).

**PLAINTIFF**

4. Plaintiff Patricia A. Rossi ("Rossi") is a natural person, and a resident of Monterey, California. At all times material, she was an employee of Cisco Systems, Inc. and a participant in the Defendant Plans, within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1102(7).

**DEFENDANTS**

5. Defendant Cisco Systems, Inc. ("Cisco") was and is a California corporation, with its principal place of business in San Jose, California. At all material times, Cisco was and is the Employer maintaining the Defendant Plan, and is therefore a Plan "administrator", "fiduciary" and "party in interest", within the meaning of Sections 3(14), (16) and (21) of ERISA, 29 U.S.C. §§1002(14), (16) and (21).

6. Defendant LTD Plan was and is an employee welfare benefit plan, within the meaning of Section 3(1) of ERISA, 29 U.S.C. §1002(1). Plaintiff is informed and believes, and thereon alleges that at all material times the LTD Plan was fully insured through premiums paid to MetLife pursuant to that certain Group Policy No. 113189-G.

7. Defendant MetLife is, on information and belief, the party designated in the above Plan to make determinations of disability and benefit payments under the Plan and said Group Policy. Defendant MetLife is therefore a Plan "administrator", "fiduciary" and "party-in-

interest", within the meaning of sections 3(14), (16) and (21) of ERISA, 29 U.S.C. §§1002(14), (16) and (21).

8. Defendant Employee Welfare Plan was and is an employee welfare benefit plan, within the meaning of Section 3(1) of ERISA, 29 U.S.C. §1002(1). Plaintiff is informed and believes, and thereon alleges that at all material times the Plan was self-funded.

**FACTS**

9. Plaintiff Rossi was employed by Cisco Systems, Inc. as Global Business Development Manager since 2007. In that capacity, she was responsible for driving almost $3 Billion in annual revenue for Cisco across 61 countries, with Cisco's largest partner and re-seller in South Africa. She had a team of 13 employees who reported to her, and traveled about 65% of her time. Much of her work was by computer and email, and she generally had to respond to about 2,000 emails per week. She made over $250,000/year in salary, bonuses and commissions.

10. Beginning in 2008, Rossi experienced pain in her neck, hands and arms, with shooting pains up her arm and over her shoulders. She was diagnosed with a pinched nerve in her neck, and underwent a cervical fusion in June 2009. She moved to California to continue to work for Cisco, and gradually returned to full-time work in April 2010. In 2010, Rossi was also having increasing difficulties with her lower back, owing to congenital scoliosis, which had increased in curvature to about 63 degrees. The problems with her gait caused her to tear the meniscus in her left knee, but she quickly went back to work. Rossi then had lumbar fusion surgery in June 2011, and tried to go back to work again with reduced hours and accommodations in October 2011, but was never able to return to work full time. Rossi's problems with her knee worsened, and she underwent a total knee replacement in June 2013.

11. Since Rossi's lumbar fusion in 2011, she was only able to return to work at all because of extensive accommodations provided by Cisco, by her main customer in South Africa, and by personally employing a person to do her computer work and all her housekeeping at home. In order to do the computer and email work at Cisco, her South African re-seller provided funds to pay for 3 employees internally at Cisco to assist her in doing almost all her computer and email work, in addition to staying on conference calls with her in order to take notes and

prepare memos for action items to her team. Her main customer in South Africa even agreed to travel to San Francisco to meet with her, so she would not have to travel there. When Rossi was required to travel, she had to stand up for the entire flight, except for takeoffs and landings. She also had to use porters and bellmen to handle all her luggage, because she could not lift or carry any bags.

12. MetLife initially found Rossi was totally disabled in July 2011, due to her diagnoses of scoliosis, lumbar stenosis, cervical and lumbar degenerative disk disease and cervical radiculopathy, and began paying her LTD benefits of approximately $12,000.00/month... After paying her 24 months of Long-Term Disability benefits, MetLife had Rossi's file reviewed by a Nurse, who opined that there was insufficient "objective clinical findings" to support the diagnosis of cervical radiculopathy, and that the other conditions were limited under the Policy to no more than 24 months. MetLife terminated Rossi's LTD benefits effective December 21, 2013.

13. Because Rossi was then left with no income to support herself, she intended to return to part-time work at Cisco in January 2014 but then tore and detached the retina in her left eye about December 26, 2013. She had immediate surgery to repair the torn retina, but complications from the surgery caused swelling and puckering in the retina. Because of the vision difficulties, she took off work entirely about March 10, 2014 and has been unable to work since then.

14. Rossi timely appealed the termination of her LTD benefits to MetLife beginning in June 2014, with supplemental appeals in August, September and December 2014. These appeals were supported with extensive medical, functional and vocational reports and testing, including objective clinical findings of Rossi's cervical radiculopathy, as well as a new diagnosis of chronic Thoracic Outlet Syndrome, with MRI/MRA/MRV scans showing compression of the brachial plexus, as well as pulse oximetry testing and other functional testing which confirmed that Rossi could not use her hands for repetitive activities for more than a few minutes without severe pain and migraines.

15. In response to this evidence, MetLife segmented Rossi's claims into several

pieces, attempting to separate them by diagnosis rather than examining all the evidence as a whole. MetLife had the claim file reviewed by several physicians, provided by companies notorious for employing physicians to write favorable opinions for insurance companies. None of these physicians ever examined Rossi in person, or even spoke to her or her treating or examining physicians. After several reviews by these physicians, MetLife upheld its termination of Rossi's LTD benefits by letter of September 10, 2015, concluding that there was still insufficient evidence to support disability from cervical radiculopathy (despite the contrary opinions of two of Rossi's treating physicians), and that functional limitations from Rossi's Thoracic Outlet Syndrome, migraines and vision deficits would not prevent her from returning to work at her previous job with Cisco (despite Rossi's functional capacity testing that showed she could only perform very part-time sedentary work earning about $15/hr.).

16. Because of MetLife's arbitrary and bad faith denials of her claim for LTD benefits since December 21, 2013, Plaintiff Rossi has been required to incur expenses for medical, functional and vocational testing, as well as attorneys' fees to pursue her appeal, only to have MetLife dismiss or ignore all the evidence submitted.

**FIRST CLAIM**
[Claim for Disability Benefits]

17. Plaintiff incorporates by reference and realleges the allegations contained in Paragraphs 1 through 16 above.

18. Defendants, and each of them, have failed to comply with their duties under ERISA and the applicable Plan documents to afford Plaintiff a full and fair review and determination of her claim for continued long-term disability benefits. Defendant MetLife has ignored Plaintiff's evidence supporting her continued disability, and relied solely on a records review by a biased physicians in claiming Plaintiff does not suffer from Thoracic Outlet Syndrome, cervical radiculopathy, migraines and vision deficits which preclude her from using her hands and arms for any repetitive activity, contrary to the opinions and diagnostic tests by all of Plaintiff's treating and examining physicians. Defendant MetLife's denial of benefits and

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 5 -

1  dismissal of Plaintiff's appeal was biased and tainted by its pecuniary conflict of interest.

2  Accordingly, this Court may not defer to MetLife's decision, and exercises *de novo* review.

3      19.    Moreover, the Cisco Systems, Inc. Group Policy providing such LTD benefits

4  contains no provision conferring any discretion on MetLife in administering claims, so this Court

5  exercises *de novo* review on this basis as well.

6      20.    By their failure and refusal to pay Plaintiff's long-term disability benefits,

7  Defendants, and each of them, violated the terms of the Plan and Policy and Plaintiff's rights to

8  such benefits pursuant to ERISA Section 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B).

**SECOND CLAIM**
[Breach of Fiduciary Duty]

11      21.    Plaintiff incorporates by reference and re-alleges the allegations contained in

12  Paragraphs 1 through 20, above.

13      22.    As the alleged Plan fiduciary responsible for determining claims for benefits,

14  Defendant MetLife was required, pursuant to Part 4 of Title I of ERISA to discharge its duties

15  with respect to benefit claims prudently, for the exclusive benefit of Plan participants and

16  beneficiaries, and in accordance with the specific fiduciary obligations imposed therein and

17  under the Plan documents.

18      23.    MetLife breached said fiduciary duties by, among other things:

19          (a)    reversing its own determination that Plaintiff was disabled from her own

20              occupation, without any improvement in Plaintiff's medical condition;

21          (b)    repeatedly using file reviewing physicians from companies with financial

22              incentives to opine in favor of insurers;

23          (c)    repeatedly refusing to consider Plaintiff's pain as a functional limitation;

24          (d)    failing to conduct an in-person Independent Medical Examination of

25              Plaintiff, despite having the authority under the Policy to do so.

26      24.    In its decision to terminate Plaintiff's LTD benefits, and its refusal to provide a

27  full and fair review of her appeal, Defendant MetLife acted arbitrarily and capriciously, in willful

1  disregard of the terms of the Plan and Policy provisions, the medical evidence submitted, and its
2  legal obligations.  At all material times, Defendant MetLife acted herein only in its own financial
3  interest in denying Plaintiff's claim.  Accordingly, Defendant MetLife has breached its fiduciary
4  obligations under ERISA and the Plan.

**THIRD CLAIM**
[Waiver/Unclean Hands]

7  25.  Plaintiff incorporates by reference and re-alleges the allegations contained in
8  Paragraphs 1 through 24, above.
9  26.  Throughout the course of Plaintiff's LTD claim and appeal, Defendant MetLife
10 has  wrongfully terminated Plaintiff's LTD benefits and denied her appeal, while demanding that
11 Plaintiff reimburse it for any award of Social Security Disability benefits.  Accordingly,
12 Defendant MetLife has, by its own conduct in breach of its fiduciary duties, waived and forfeited
13 any legal or equitable claim to set-off Plaintiff's future award of Social Security benefits from
14 the LTD benefits owing to Plaintiff.

**FOURTH CLAIM**
[Reinstatement of Life Insurance Benefits]

17 27.  Plaintiff incorporates by reference and re-alleges the allegations contained in
18 Paragraphs 1 through 26, above.
19 28.  Plaintiff sues the Defendant Cisco Systems, Inc. Welfare Plan in order to obtain
20 complete relief for Defendant MetLife's wrongful termination of her LTD benefits and bad faith
21 denials of her appeals.  Upon the restoration of Plaintiff's LTD benefits, Defendants should be
22 required to retroactively reinstate Plaintiff's life insurance and other welfare benefits, pay any of
23 Plaintiff's outstanding claims thereunder, and reimburse her for premiums she was wrongfully
24 required to pay.
25 //
26 //
27 //
28

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES                                  **- 7 -**

1  WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them as
2  follows:
3  1. <u>On the First Claim</u>:  For an Order directing Defendants to pay to Plaintiff the
4  Long-Term Disability benefits to which she is entitled under the terms of the Plan and Policy,
5  together with pre-judgment interest from the date such benefits should have been paid, and
6  barring Defendants from terminating Plaintiff's LTD benefits in the future absent some
7  significant improvement in her medical condition.
8  2. <u>On the Second Claim</u>:  For an Order removing Defendant MetLife  as Plan
9  fiduciary and barring it from any further responsibility for claims determinations under the Plan.
10  3. <u>On the Third Claim</u>:  For an Order barring MetLife from any setoff or
11  reimbursement from Plaintiff's recovery of Social Security Disability benefits, during the period
12  December 21, 2013 to the date Plaintiff's LTD benefits are reinstated.
13  4. <u>On the Fourth Claim</u>:  For an Order requiring Defendants to restore Plaintiff's life
14  insurance, with waiver of all premiums during the period of her disability, and other welfare
15  benefits wrongfully withheld.
16  5. <u>On all Claims</u>:
17  a. For costs of suit herein, including reasonable attorneys' fees; and
18  b. For such other and further relief as the Court deems just and proper.

20  DATED: September 30, 2015                    LAW OFFICE OF GEOFFREY V. WHITE

22                                                                  By___/s/_____
                                                                              Geoffrey V. White,
                                                                              Attorneys for Plaintiff

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES                                  - 8 -